Next case is number 22-2839 Robert Wharton v. Superintendent Philadelphia District Attorney's Office Paul George Nancy Winkleman Appellants in this case Mr. Rudofsky Good morning your honors I represent the appellants in this matter the sanctions at issue in this appeal were imposed under rule 11 when the district court which had made a preliminary conclusion of a breach of the violation of the ethical duty of conduct for the failure of the D.A. to disclose the evidence of the escape attempt in this matter when the district court heard undisputed evidence at the evidentiary hearing on the ethical violation the court acknowledged that there was no knowledge that the district attorney's office had that Nancy Winkleman had that Paul George had at the time they made the notice of concession that there had been that prior conviction the court then shifted grounds and instead of focusing on 3.3 of the Pennsylvania rules of conduct and duty of procedure on two related grounds one of which both of which have simply no factual support one is that there was a duty to inform the court of the fact of the escape attempt that would have been anti-mitigation evidence that would have undermined the concession that the district attorney's office made and second even if they had no to investigate on the remand from this court whether there was additional anti-mitigation evidence that had not been introduced at the death penalty hearing in 1992. Our basic submission on this review and I want to talk about the standards under rule 11 to begin with our basic submission is that there is no evidence to support either theory for this concession is not even subject to rule 11 review because it was simply a statement of fact that we concede this issue and third that even if the statement that the district attorney's office had made a quote careful review of the case before it made its concession that careful review as this court has recognized in its remand order and in other cases is a question of whether the district attorney or any party in this case would have some reason to think when this case was remanded there was anti-mitigation evidence out there that had not been introduced at the hearing in 1992 the death penalty hearing and therefore there is simply no legal or factual support for the court's rule 11 determination. Mr. Rudofsky let me ask you a threshold question you know we review as you well know we review orders not opinions. This order didn't say anything about the second sanction which I think is fair to describe as a follow the law sanction. It seemed like precatory words to me. Is that even an issue here since it wasn't in the order the order says that and the order also doesn't say anything as I recall correctly from wrong I don't think the order says anything about an apology. I think the order just says that there was a rule 11 violation. Between the order and the opinion I think it was pretty clear which why an apology was made and I'll address that by the district attorney. Well I'm just asking what's in the order. Doesn't the order just make a reference to a rule 11 violation? It doesn't but I think everybody involved in this case thought and certainly the office thought whether they were required to or not that the way they had communicated with the victim's family was not optimal. But are you here are you here asking I'm generally asking what relief you're seeking. Are you asking us to undo the apology letters that have already been sent by the district attorney's office? Let me make it clear we don't disagree with either on the substance on the policy of either of the things that Judge Goldberg ordered or refers to in the case. There is no relief that can be given. The relief here is that there's a reputational interest here. There is no rule 11 sanction entered. I mean is it is there you need injury in fact causation and redressability for standing. How is this redressable by a favorable judgment? We have an opinion by a district judge that has been published which should have been avoided by the local rule I'll get to that. But we have an opinion that's been published that says they violated their ethical duties under rule 11 and contemporaneously under some vague duty of candor. Regardless of the fact that there wasn't a sanction directly against them a payment or some other kind of direct harm. You're not asking us to enter an order striking the district court's opinion are you? No. We're asking you to reverse the finding of a rule 11 violation. So it's live because we have an order that says there was a rule 11 violation and you want us to enter an order saying there was no rule 11. Exactly. And even though the apology has been issued and is not intended to be rescinded and even if we agree that the follow the law injunction in the district court's opinion were precatory words there is still ongoing harm because of the reputational harm that you've. Exactly. And the district court can certainly say prospectively for me, for Judge Goldberg or for the district court could adopt it as a system wide rule. If you're going to concede an issue give us the reasons for it prospectively. But you can't find a rule 11 violation for that not having to be done. So your point is just we're fine with the relief that the district court ordered. We just don't like it that he said that he did so pursuant to the sanction authority of rule 11. That's correct. That's who we're asking for to reverse the finding of a rule 11 violation regardless of what sanctions. We review for abuse of discretion. I'm sorry? We review the district court's finding of sanctions order for abuse of discretion. Right. And I think the standard of view is discretion with teeth. And when we look at that and the reason I say that is we've made clear in our brief this court and the U.S. Supreme Court has made very clear, number one, that sanctions may be imposed only where there are factual or legal contentions that are patently unmeritorious or privileged. That is a 1991 precedent before the 1993 amendments to rule 11. The precedent that you are citing is an outdated precedent. It's not outdated because actually the amendments to the rule made it even more strict. It created a safe harbor provision. And as we point out here, the courts have been very clear. This court hasn't addressed that question. But where the sanctions are imposed sua sponte, as they were here by a judge, the safe harbor provision, which operates in almost all rule 11 contexts, when an adversary says to another adversary, we're going to move to rule 11 sanctions, they first have to give notice and allow that party to correct if they wanted to correct it. With sua sponte, and we briefed this, with sua sponte rule 11 sanctions, there is no safe harbor. And there was no statement made in the notice of concession that's sanctionable under rule 11. The undersigned have been carefully reviewed. Now, you take the position that is not a factual assertion? That's right. And there's support for that. If you had a stack of papers from students, and you threw them down the stairs, and you then signed a certification that having carefully reviewed these papers, I'm now assigning these grades, are you saying that would not be a factually false assertion? That's right. That is not correct. I must disagree with you. I understand that. We point to the Ronco case, the Seventh Circuit. We point to commentary. The ruling, you know. Taylor's our most on-point precedent. In Taylor, the sanctions were sua sponte there. And the sanctions in Taylor came about, I suggest, and I welcome your pushback, but there seem to be some similarities between Taylor in this case, in so far as in Taylor, the lawyers did nothing by way of investigation to evaluate why the mortgage payments had not been made. And likewise here, the district attorney's office did nothing to do a criminal records check or otherwise do any basic research. They sort of stood pat based on what they assumed the office had done in the 80s and 90s. So why doesn't Taylor hurt your argument here? And let me go directly to that, because I think the main point here is accepting the proposition that the statement, which was simply a concession of a legal issue after careful review, assuming that is a factual contention, therefore subject to Rule 11 review, the question then becomes, as this court framed it on the remand order, and under Rule 11, the question is if you make a factual contention, is there evidentiary support after a reasonable inquiry under the circumstances? So when this case came back from the Third Circuit, what is the defense lawyer going to do and what is the prosecutor going to do? Judge Goldberg got it right. He said the crux of the matter was whether there was anti-mitigation evidence, right, which could undermine the claim of ineffectiveness of counsel, as you just heard, on the prejudice question. On that question, as this court suggested, and as all courts do, and as lawyers do, when the case came back, they looked at the evidence that was produced at the death penalty hearing. And what do we know about the death penalty hearing? There are two constructions of this court's remand order. Judge Goldberg takes the construction, well, your office takes the construction, your client takes the construction that, you know, we just review the record that's in front of us. But Judge Goldberg takes the construction of the remand order that, well, anti-mitigation evidence, it's not just things that are in the record. Let's say we think those are both plausible. Maybe Judge Goldberg is a little more plausible. Under an abusive discretion standard review, how can it be an abuse if his reading is at least a plausible one of the order? Because any violation of Rule 11, and we may disagree on this, I don't think it's pre-amendment or not, has to show a deliberate, intentional misrepresentation of the record. The precedents you cite are product liability civil cases. We don't have precedents dealing here specifically with the situation of a prosecutor. And you take the quite shocking proposition that prosecutors have a heightened duty of candor only in the Brady context. That's not our position, and we made it clear in our reply. They have that heightened duty, obviously, in the Brady context. They have that heightened duty if they know information, for example, of sentencing that could impact the judge. They also have, under the Supreme Court precedent, a duty to do justice. Just because they can win an issue, they're not supposed to do that if they reach a reasoned conclusion. And the heightened duty means more than don't affirmatively lie. I mean, we allow fraud to be, it can be fraud to tell a half-truth, to selectively omit things, to distort things. So let's say that a prosecutor was at a plea hearing and wound up very selectively representing things to the court. Not technically ex parte hearing, but functionally not adversarial. And it's grossly misleading as to how culpable this person was or how much drugs was involved, etc. Would that be sanctionable? It's possible, depending on what those facts were, what they knew. Even though it's not an outright falsehood. But we have two basic facts here. They did not know about that, and that's clear on the record. Judge Goldberg accepts that. Judge Goldberg never asked, never asked, despite the fact that he said it was a fulsome request, for any pro or con. Remember what happens here. After the notice of concession was filed, Judge Goldberg wrote an opinion and said, you know, I think I may not accept this. Answer two questions. Do I have to accept your concession, and can I hold a hearing? He did not say at that point or at any point, give me the information that you looked at in this careful review, pro and con. And that's why, let me get back to the point, when we're back at the remand, we look at the record of that hearing, and you've just rehearsed this, on this question opening the door. The defendant introduced evidence of good character, and the jury found a mitigating factor of good character. That good character evidence is rebuttable, and we have the case sites in our brief, Judge. Commonwealth v. Thomas and other cases. I'm sorry, which ones? All right. So I'm going to give you those sites. Yeah, the sites right now. Under the Pennsylvania Rules of Evidence, 404A, U.S. v. Gonzalez, Third Circuit case in 2018, and Commonwealth v. Thomas, what the district attorney, who was a zealous advocate for the death penalty in 1992, was entitled to do, was both to use the escape attempt evidence as rebuttal of good character. He opened the door. He said, I'm of good character. That's rebuttable evidence. And secondly, even more important, under Section 9 of the aggravators, this was evidence of a history of potentially violent conduct. Indeed, we cite Commonwealth v. Thomas in our brief, in our applied brief at page 7. That was a case in which the Pennsylvania courts held as a matter of law that a criminal trespass, a criminal trespass, could be a crime of violence because it could provoke somebody to do it. So what do we know about this escape attempt? As you've heard, very graphically, when he ran from city hall, there was a shootout. People could have been killed. People could have been harmed. That was admissible as an independent aggravator. Forget about rebuttal. As an independent aggravator, the zealous district attorney didn't use any of that. Why should a district attorney 30 years later say, well, maybe there's something else out there we should look for? To everyone, to a predicate legal issue, you came up here suggesting that it can be a violation of Rule 11 only if there's actual knowledge. But then when I pressed you on heightened duty of candor, you agreed that a prosecutor may have heightened duty of candor in multiple situations. And the rules suggest that it might be that a defense lawyer is sanctionable only when the defense lawyer has knowledge and makes a falsehood. But prosecutors, at least under ABA standards, can be liable for negligence, for asserting something they don't reasonably believe is true. So what makes you insist that, at least under Pennsylvania law, the standard is actual knowledge, not recklessness, not negligence? It's not a matter of Pennsylvania law. I think under Rule 11 and all the cases we cite, I mean, look at McCoy in the Supreme Court, which is cited by the amicus, which deals with the question of duty of candor. And the Supreme Court said you can only find somebody in violation of a breach of a duty of candor for a deliberate misstatement. In their briefing, they cite McCoy, they ellipse out deliberate and say any misleading statement. I mean, talk about a misrepresentation of fact and law. That's what the Supreme Court said. But my point is that's what the Supreme Court said for duty of candor and for Rule 11. My point about Pennsylvania law is that the district attorney in 1992 had every authority as an independent aggravator and as rebuttal to good character to present the evidence of the escape attempt. If they didn't do it, why is it unreasonable 30 years later when the case gets remanded and nobody recalls that escape attempt? They have no knowledge of it. It's 30 years before. They weren't even there. Why is it unreasonable to say I did a careful review without looking at that? But, I mean, it seems that there's this, that maybe I'm reading too much into the two cases, but there's this matching. If we're going to say that the defense attorney's performance was deficient because he didn't investigate prison adjustment, and then it seems that that's unreasonable, that's deficient, and now we have the district attorney's office that doesn't investigate facts related to prison adjustment, and now we're going to say no problem. It strikes me that getting the same conclusion, deficient and deficient, for in essence the same inquiry, makes a lot of sense. Why doesn't it? And we address that directly in our reply brief, and I think I make that argument. Under Rompilla, under all the cases in this court, the defense lawyer in a capital case has a duty to look for mitigation in areas where there's some indication there might be mitigation. The Supreme Court in Rompilla made it clear, this court has made it clear, you don't have to do a fishing expedition. You don't have to turn over every rock in the universe to see if there's possible mitigation evidence out there or anti-mitigation evidence out there. It's only where there's reason to believe you will find it, and Rompilla said there was reason to find it there because what the prosecutor had used as aggravating circumstances was in a file in the court, and that's why the defense lawyer should have looked at that file because there was abundant mitigation evidence there. That's the ruling in Rompilla. With a very clear message, though, to defense lawyers, we're not asking you to do this kind of complete review, right, and look where you have no evidence. That's why I say when a reasonable district attorney in 2019 gets this case on remand and they look at the death penalty hearing in 1992 and they know good evidence of character was presented, the district attorney didn't use it, and, in fact, at the hearing before Judge Goldberg, Mr. Barker from the AG's office stood up and said, yes, we knew about it, we just didn't think it was admissible. Wrong as a matter of state law. Wrong as a matter of state law. It was rebuttable under 404A, once good character was introduced, and it was admissible as an independent aggravator. Therefore, there was no, and that's exactly what the AG has just argued. You only have to go where there's fruitful possibilities of finding evidence. Here it was, and under Rule 11, it's just a reasonable inquiry under the circumstances, not strict liability. Reasonable inquiry, okay, and so reasonableness itself starts to sound like there's a negligence component. Someone could not actually know but have done a sloppy inquiry and yet could violate that position. I think given the standards under Rule 11, that's not right. The question here is not whether there's a notice of the Rule 11 standards, okay? Maybe it should be the case. Maybe it is the case that for a very severe sanction, we have higher standards. Rule 11 itself breaks up monetary sanctions differently. If we're suspending someone, just barring someone, there might be a stronger argument for an intentional requirement. But where the sanction is as mild as an apology and follow the law in the future, wouldn't both lesser process and a lesser mental state be appropriate than those required for a more severe sanction? I disagree completely. As Judge Goldberg recognized, Nancy Winkleman and Paul George, we just heard, came before his court with excellent reputations, professional reputations, excellent in terms of their legal skills, excellent for many, many years of ethical duties to the court, with not a blemish on their records.  Notwithstanding the local rule that said this should have been sent to the chief judge. Is the local rule required by due process? The local rule is a failure to follow the local rule, a violation of due process. I think this court's opinion in Adams, in which a sanction was reversed by this court for a violation of the same local rule out of the Virgin Islands, which we cite in our brief, yes, it does control. But my main point here is that there is a very strong reputational interest here. Quite frankly, it's more than a $1,000 fine. Quite frankly, it's more than a $20,000 fine. It's the professional reputation of our clients. Let's grant that significant interest. Let's talk about due process. Notice and an opportunity to be heard. How is it that your clients did not have notice? This is a process of several years of discussing. We're not saying they didn't have notice, even though the judge shifted ground completely at the hearing. They're not denying the notice. We were prepared. What opportunity to be heard were they denied? And there was a full hearing. The fact is, at the hearing, what happened? We know that it was clear from their testimony and no rebuttal that they had no knowledge of that escape attempt. It was clear from the testimony of Ms. Wickleman and Mr. George that they did what any reasonable lawyer would do on remand, they looked at the death penalty hearing. You're going to the merits. I thought the questions were about process. Are you conceding the process point? That's right. We're not arguing that the hearing before Judge Goldberg was a fair, open hearing. That's right. He switched ground in midstream. That's fine. We briefed those issues. Our basic point is... And there's no evidence that you would have liked to have gotten in at that hearing, standing here now, that you weren't allowed to put in then? No, sir. And in fact, beyond that, at the hearing, there was testimony, as I say, because on the standard of view of use of discretion, if there's no factual support and no legal support, that's an abuse of discretion. There is no factual support for the notion that they knew this and didn't disclose it. Everybody agrees on that. There's strange testimony from Coffman where he said he knew it, but then he recanted, but then he said the office... He didn't personally know it, the office knew it. I'm sorry. It was Mr. George. He was asked at the initial hearing, did the office know about it? Well, sure. Back in the 1980s, the office knew about it. But that was an assumption, right? Yeah. They're prosecutor figures. They had to know about it back in the 1980s when the escape attempt happened. But none of the people on the Capitol case review committee knew it. Judge Goldberg did not make a finding that Paul George or Nancy Winkleman knew it. And with corporate knowledge, you impute what the whole entity has. The corporate knowledge is what happened back in the 1980s. This was personal liability under Rule 11. If they didn't have knowledge, and there's no argument on either side, that somehow they had that knowledge and therefore they're responsible because somebody else in the office knew it 30 years before, you couldn't support a Rule 11 finding. The basis for the reasonable belief then gets litigated and as to what's the appropriate record. But let me go to the real thrust of his opinion because once it became clear that they had no personal knowledge, he switched grounds and he said, well, you may not have had personal knowledge, but you violated Rule 11 because you asserted this was a careful review. There wasn't a careful review, and that's exactly what I've just addressed. Assuming that's sanctionable, that statement can be reviewed under Rule 11, given all the information that the district attorney had in 1992. And, in fact, Mr. Barker, during the hearing, interrupted from the AG's office when we got to this point, and it's in the record of that hearing, and after Mr. George had said this is all we reviewed, he said, well, you're really misrepresenting what we did back in 1992. Sure, we knew about it, but we made a decision for some reason wrong. We couldn't have used it to rebut. Pennsylvania law was clear on that. And so, in retrospect, 30 years later, when Nancy Rickerman and Paul George and the Capital Case Review Committee looked at it, they don't do what the Supreme Court said you don't have to do, which is a phishing expedition. If they didn't use it and they were zealously in favor of the death penalty, why should we? I don't know how you can credibly associate doing a basic criminal record search with a phishing expedition. That's a 15-minute exercise. You can rely on the fact that the zealous district attorney in 1992 would have used it if there was any conviction that would rebut the mitigation evidence. Mr. Cannon did both penalty hearings, did he not? Correct. So then, under your theory, in 1992, when Mr. Cannon was preparing for that hearing, he didn't have to look into any prison records because surely he would have done his homework for the prior hearing. It's sort of based on failure. You're building failure upon failure. It's not whether Mr. Cannon knew or didn't do. That's a separate question, right, on your appeal. The issue in this appeal is not whether the concession was proper. It was whether there was a violation of Rule 11 in some way, which is a much different kind of question. And the question is whether the district attorney in 1992 knew and why they didn't use that evidence. I'm suggesting there's another question, which is I'm not sure it's sufficient after this court's remand order for, based on what everybody had a lot more information after our opinion in remand order than they had before, and I'm not sure it suffices to say that no new inquiry was required, no reasonable inquiry was necessary, because the district attorney's office was entitled to stand pat on everything that had happened over 20 years ago. That seems to me to be a stretch. It's not a matter of standing pat. The question is, under Rule 11, the question is was there evidentiary support for your assertion, your Medicare for Review, and it is a question of the reasonless. It's not a strict liability. It's not 20-29 sites. This court has made clear that we're not going to find somebody in violation of Rule 11, right, because when we reconstruct everything, we think there was something there, kind of a strict liability standard. So what you're saying is Rule 11 gives a certain amount of advocacy wiggle room. If a civil complaint comes in and they say a person's negligent, they're charging negligence, they may have some reasons for that person being negligent. Those may not prevail in the end. Defendant may win. The jury may find them not negligent. It may go down to somebody's judgment not negligent. Similarly, when someone signs a paper that says they did a careful review, I guess it's possible at the end for a court to reach an opposite conclusion, no, the review was not careful. It seems that that's what happened. But is simply a finding that the review wasn't careful good enough to lead to a Rule 11 violation? It's not under the standards of Rule 11, as I mentioned. It's got to be deliberate, intentional, misleading, or deliberate refusal to give what the court asked for. Go back to the basic point and think about the question about communication with family also. Yeah, I wanted to ask you about that because that was a true statement. When they said there was communication with the family, that to me is a true statement, but it also seemed remarkably misleading. So is it your argument that it wasn't misleading, or is it your argument that, yes, it was misleading but not sanctionable? It was neither misleading nor could it lead to the conclusion that Judge Goldberg drew without him asking very simply. If he thought, right, well, you said you had communication with the family. Maybe that means the family doesn't care, the family's not in opposition. We understand that. You didn't ask for any information. It would be very easy under Rule 11, and this is the safe harbor provision for a judge, to say to the district attorney's office you had communication with the family. What was their response? Never asked. He just drew the inference at the end of the day you intended to mislead me. It's got to be a deliberate misleading. It was true on its facts. And in fact, when you look at the record here, what they did was based on the communications made by the victim advocate in the office. We have her affidavit, and we have a confirming e-mail that she spoke to a family member. She did almost nothing. It was hardly a good faith effort to talk to the family. I disagree, Judge. So you think not talking to the survivor of this tragedy, this double homicide, a seven-month-old somehow survives, and you don't think it was inadequate and beyond the pale for the investigator not even to pick up the phone and attempt to call her? In fact, in retrospect, that's why that letter was written. But let me tell you what she did and what we have confirmation was. She called Mr. Hart. There was a family member here. Other family members were traveling. Said, we have this under review. We wanted to advise you. Here's my contact information. Let me know if anybody in your family wants to talk to me. I'll hear from them. That's as lame and tepid an outreach to a family as I could ever imagine. It sounds a lot like someone just trying to check a box. The comments made to Hart, according to Hart's testimony, which the district court found credible, that he was misled by this investigator. It was the antithesis of an investigator. But there was no misleading. They didn't say anything that she didn't confirm. She said, we're reconsidering. Oh, no, everything was true. Everything was true. Everything was true and shockingly misleading because any rational person, I think, any rational district judge who would get that would take that statement that there was communication with the family to be some sort of endorsement that the family was on board with the reduced punishment. That's what that screens out to me anyway. What am I missing? It's one possible inference. It's not the most reasonable inference? Not without asking. Then what's the most? Forget about asking. What's the most reasonable inference? If the inference that I just drew is not the most reasonable inference, please tell us what is the most reasonable inference from that statement. Well, first, because what the family says has no impact on the effect of this question at all. Whatever their view was. We agree on that. What is the most reasonable inference to that statement? There were two equal inferences. There was a communication. The family may have agreed. They may have disagreed. We're only notifying you that we communicated it. All right, so your argument is that it's equally a reasonable inference that the family disagreed with the recommendation, with the concession. We don't know what they disagreed. We don't know what they had agreed on. I'm not asking what we know. We're talking about inferences. I'm trying to get your position on what the most reasonable inference is, and I thought I just heard you say that it was equally reasonable to infer from the statement that there was communication with the family that the family objected to the concession. Is that your argument? Certainly, one could say, okay, at that point, that's what I think, but under Rule 11. No, but could one reasonably say that? But I'm looking through the view of Rule 11. You're not going to sanction a lawyer who, remember, what they did was based on what the victim advocate said. Nancy Wickerman did that. Well, speaking of a lawyer, let me pivot for a minute. Neither Wickerman nor George signed the concession. Coffman did, as I recall. That's correct. Could he sanction the wrong people? No, no. Could he have sanctioned Coffman? Coffman signed it. He did that because of legal reasons. We got a finding from Judge Goldberg that this was done with an improper purpose. We have to defer under abuse of discretion. Why is it just completely impossible to defend that factual finding, that inference? I can see the pattern. I can see what's going on here. They're not outright lying, but they're just really skirting what any reasonable person would take as a careful review, given the remand. They're skirting what notification of the victim would be. I can connect the dots. I see what this office is doing. The fix is him. Right, because when you look at the federal statute, which is the base, right, the victim's rights statute, and what a federal judge has to do under that statute, there are four things. They must ensure four things, and I ask you, when I pick up these four things, how this concession violated any. Number one, there's a right not to be excluded from any public court proceedings, with some exceptions. It certainly didn't affect that. They were given notice when the hearing was. They appeared at the hearing. Number two, they have a right to be reasonably heard at any public hearing involving pleas, sentences, or release. Same thing is true. Number three, they have a right to proceedings free of unreasonable delay. The notice of concession had nothing to do there. And number four, they have a right to be treated with fairness and respect. But number two, to be heard presupposes they will be notified. And notifying one person in the family and saying, hey, by the way, I'm going to put it on you to let everyone else know, is not the same as a victim witness coordinator reaching out. If they were reasonably heard at any public hearing involving plea sentences, they were fully notified of when that hearing would be. There's nothing in this statute that requires the district attorney or anybody else in this process to notify the victims and the family as to why they're doing something. What they're entitled to is notice that they're doing it. They're entitled to come to court and make their objections heard if they want. The court obviously can't be swayed one way or the other, nor can the district attorney. If you had a victim who was against a death penalty, we know there are prostitutes out there that ask for the death penalty anyway. They don't have to give in to that view. It's a two-way street. My point here is that the whole argument about the communication with the family, however you look at it and what a judge might first think, and I might first think that also. Communicate with the family may be a stimulant to me that they are not objection. That's not what they said. It's easy just to ask me what they said. But when you look at the underlying statute which controls the victim's rights, none of the rights in that statute were negatively impacted by what the district attorney did in their notice. They showed up. They were heard, and Judge Goldberg made that point. Can I go back to a question Judge Hardeman asked you a while ago about the notice of concession and who signed it? I noticed that Attorneys Winkelman and George didn't sign it. I understand that there's this understanding that they may have directed it or authorized it. But, you know, we aren't talking about, you know, the point that's getting our heartburn is this notice to the family. For them to be sanctioned in that notice of concession that the victim witness coordinator reached out and spoke with the family, don't we need evidence that Winkelman and George actually directed that statement or had knowledge of that statement as well? High-level supervisors often will just say, yes, go ahead and concede. Please concede. They don't always want to read every single line of a concession. It's short, but they might not want to read it. And they didn't sign it. And so when they don't sign it, I get that they might have overall responsibility for the direction to issue it. But does that give them overall responsibility, rule 11 responsibility for every line in it? Certainly not under rule 11. And certainly not when they had no personal knowledge of the communication. They were relying on a memo from their victim advocacy. And you contend that that's reasonable under the circumstances. And you would contend that that's what they noticed. I mean, it was a truthful statement based on what somebody else in the office said. So what you're saying is they didn't sign it. That's the hallmark of rule 11. Like everyone knows, signature is the hallmark. Absolutely. There's other ways, but signature is the hallmark. And so what you're saying is they didn't sign it, but even so, it was reasonable for them to rely on their offices, the statement that was generated either based on the diligence of their victim witness coordinator, when they're the supervisors, and you've got the actual attorney who signed it, but he apologized and isn't subject to any of this. So in your view, the fact that they didn't sign it, does that, coupled with the fact that they might not have directed that statement, get them off the hook for at least that statement? Or is there still some lingering potential? I won't go that far. I don't think it gets them off the hook completely because what was clear at the hearing was that because Mr. Kaufman was head of the federal division that handled these cases, the habeas division in that office, that he was the appropriate person to file the notice of concession at their direction. And it's important here, as you heard before, this notice of concession, again, talk about retrospective penalty as opposed to prospective better practices, which is a very important factor here. Scores of these have been filed. I mean, they use the same language in a lot of these, notice of concession. And district judges either agreed or they didn't agree. Mr. Rodofsky. Yes. You're not disputing that under the ethics rules, supervisors are responsible for misconduct that happens, what should be under the direction on their watch. They can't just make the first year guy the fall guy. And that's why we don't make that argument. We don't make what would be the robust argument. They didn't sign it there for end of inquiry. They were very honest to what happened. They said Mr. Kaufman was really not at fault in one way or the other. We just directed him to do it. That's why he signed it. It was at our direction. But it is a factor. But most important here, it showed there was a reasonable basis for what they did. And the question for this court is not whether the notice of concession was reasonable, but whether their investigation, that's what Judge Goldberg found. The investigation was not reasonable. I go back to my basic point. The crux of his sanction was that if you had investigated, you would have seen anti-mitigation evidence that it would have led you reasonably to not concede the case. Isn't that some of it? Well, that's not true because they are still taking the position. Well, it doesn't mean they're doing it reasonably. Well, but two different questions. Right. You don't get sanctioned for being unreasonable. That's right. You get sanctioned for lying or misleading. No, no. And Judge Goldberg could say, although with a certificate of appealability, I'm not convinced that you've shown that there's a reasonable probability of a different result if that hadn't been used. It's debatable. That's why we're here on that issue. And our only point is under the reasonableness standard under Rule 11, which is like the reasonable standards for defense lawyers and what they have to do, if there's an avenue that seems clear to evidence, do it. If there's an avenue, why would this district attorney think that the former district attorney didn't turn over every rock in this case? There's no answer to that. They were zealous. Everybody says here they were zealous in seeking the death penalty, in defending the death penalty. If they didn't do it, how is it unreasonable for my clients here to start reinvestigating when there's no evidence, as you've just heard, that there could be a fruitful end of that inquiry? Mr. Rudofsky, you've been there so long, I don't recall if you've reserved time for rebuttal. I reserve two minutes, and I'll try to keep to that. Very good. Thank you. We'll hear now from Counsel for Amicus. Ms. Gay? Good morning, Your Honors, and may it please the Court, Christina Gay is court-appointed Amicus Counsel. Confessions of error are valuable, and they have their place in appropriate circumstances. But they can't be abused by playing fast and loose with the facts or by affirmatively misleading the courts. And that's exactly what happened here, in two respects. First, appellants falsely told Judge Goldberg that they were not guilty of the crime, that they had carefully reviewed the facts behind Warren's claim that he had judged well to prison. In reality, they had not bothered to look for any rebuttal evidence, such as his prison records themselves or his criminal history, precisely the kind of evidence this Court already made clear in its remand opinion would be particularly relevant. Second, appellants misled Judge Goldberg into thinking that the Hart family did not oppose release, when, in fact, they had never even contacted Lisa, the sole survivor of Warren's crimes, after he brutally murdered her parents, and they had spoken only to one single relative who does oppose release here. All right, let's set that one aside for a minute and talk about the first one that you mentioned. Your friend on the other side argues that Gonzalez and Thomas show that the district attorney's office back in the 80s and the 90s had the ability to put into evidence the 1986 escape and also the two serious prison misconducts. What's your response to that argument that since that evidence could have come in, it's unfair to claim now that the current administration of the district attorney's office is doing anything, did anything untoward by also disregarding that or not paying attention to that evidence? So we completely disagree that it could have came in, and I think if you actually look at the sentencing trial transcript from the 1992 penalty hearing, you will see that it couldn't have come in. So at the beginning of Warren's second penalty hearing, his counsel explicitly states on the record, I am no longer pursuing an argument that Warren does not have criminal convictions, because I know that doing so will open the door to convictions he's got since his first penalty hearing. That's in the record below. That's in Warren's merits appendix at page 175. And so for that reason, Warren's counsel did not make an argument that he didn't have a criminal history. So there was no ability to rebut. And that also would have put the 2019 penalty. Well, okay, that's one avenue they couldn't rebut, but their argument is more than that. Their argument is that Warren did put in evidence of good character, and I heard Mr. Rudofsky say a few minutes ago that Gonzalez and Thomas show that good character once put at issue could have been rebutted by the Commonwealth's evidence relative to the escape. Why is he mistaken about that? He's mistaken because the law in Pennsylvania is very clear that it needs to go to the same character trait you put at issue. And at the penalty hearing, their main argument was he's a nice guy, he's nice to his family, he's accepted religion in his life. Behaving bad in prison or trying to escape does not rebut that type of character trait. And I have some sprites of my own if you'd like. Commonwealth v. Hughes, 865, 8 seconds, 761. Commonwealth v. Vander Weald, 514, 8 seconds, 189. It needs to go to the same character trait. You can't just broadly make a character argument and then broadly put in bad character evidence. So we don't think it would have been admissible. And even if – And would all of that be subject to 404B balancing? Absolutely. And the extent of the prejudicial impact would have to be considered before that would be admitted as well? Absolutely. That would be layered on top as well. Would you concede that the prejudicial impact of the 86 escape would be substantially higher than the prejudicial impact of the misconducts involving Keyes? Yes, definitely. And, again, I think the core issue here also is just whether it was fair for them to assume that this would be in the record. And so even if you end up thinking maybe there was a narrow way for them to get this in despite risking a mistrial or an appellate issue, it just frankly wasn't reasonable to read this record and think criminal convictions or bad prison evidence would have came out. I want to make one other point. I hear my friend on the other side maybe saying, well, you know, later DAs didn't make this argument in the habeas stages, even after the penalty hearing. I think he kept saying, no, there was no reason for us to look. We shouldn't have went on a petition expedition. If you look at the DA's habeas brief throughout this appeal before the 2019 notice, you'll see statements like this saying, quote, it is clear from the grievance documents that at one point defendant was disciplined for an insurrection that is itself not discussed anywhere in the prison reports he provides. This omission indicates that the reports are not comprehensive. We cite that at page 42 of our brief. There's other statements like that from the past DAs. So I think this puts them on full notice that there is evidence of bad prison behavior, and it is not in the Sue Christine record. And so under these circumstances, it is not reasonable, even if they think, you know, that their inquiry is limited to the existing record. It puts you on full notice. There's other evidence out there that very well may be relevant to Judge Goldberg. But is the Rule 11 standard is whether or not there's evidentiary support, and couldn't they say that we have some evidentiary support? The fact that other DAs didn't do this, the fact that we've given, you know, some a look at this. We might not have gone to the ends of the earth to find that out. I don't think they're here saying that they did now. But I think Rule 11 just requires having some degree of evidentiary support for the carefulness of review. And I guess in order for them to be sanctioned, they would have to have a null set there. Do you think they have a null set there? I don't think that's the right test, respectfully, Your Honor. I think that would contradict this Court's opinion in Murray-Taylor, which makes true that even literally true statements, of course a literally true statement, you know, has some fact support behind it. That can still be misleading and can still be sanctionable. The right test is just whether it's reasonably foreseeable under the circumstances that this will be false and misleading. Does it have to be objectively misleading? Is it enough that one district judge says, I thought it was misleading, it misled me? Is that enough or do we apply an objective standard? It's an objective standard, absolutely. But as Your Honors were also pointing out, you're reviewing for abuse of discretion up on top of that. And so the question is whether it was clearly erroneous for Judge Goldberg to adopt this interpretation. I mean, we think his interpretation was the best one, but it certainly wasn't clearly erroneous. Your friend on the other side said careful review is not a factual finding. What's your view on that? We think it absolutely was. I mean, we agree with Judge Zubik's example on this. You know, if you threw the papers down the stairs, that obviously would be false. Subjective statements can have embedded facts in here. We think two things were embedded. Number one, that they had looked outside of the record, and that's because of this court's remand order. Where did we make it clear in our opinion remanding the case that they had to look outside the record in conjunction with the remand hearing? So one line in this court's opinion says, the Strickland prejudice inquiry will require reconstructing the record and assessing it anew, not merely considering the mitigation evidence that went unmentioned, but also the anti-mitigation evidence the Commonwealth would have presented to rebut the mitigation testimony, which seems to imply evidence outside the record. Other parts of this court's opinion then say, you know, maybe the DA's office would have put in an expert of their own to rebut, you know, we see to date the Commonwealth has not done that. So all of this is contemplating evidence outside the record. I'd also like to note, I mean, that's not some inquiry this court made up. That's consistent with longstanding precedent on how you evaluate the prejudice prong of a Strickland claim. This court's opinion in Williams v. Beard actually explicitly says, you don't just look at the penalty hearing. You've evidentiary hearings on habeas. The Supreme Court says that in Wiggins v. Smith as well. And so that's the backdrop that Judge Goldberg is interpreting this statement against, is knowing that the prejudice prong of Strickland usually requires looking at evidence outside the record. So that's why this careful review, while it might mean something in a different circumstance, in this case it really clearly meant that they had looked at something outside the record. And as I just said, even if it could be interpreted to mean, you know, they only looked at things inside the record, there's indications all over this existing record that there is evidence of bad behavior that Judge Goldberg would likely need to know about. What about the second issue, communication with the family? Yeah, absolutely. So we think that Judge Goldberg very reasonably found that this was misleading for two key reasons. Number one, it implied the family was not opposed. And number two, it implied at least that Lisa had been contacted. Starting with that second issue, Lisa is the sole survivor of Warden's crimes. She's also the closest family member to the direct victims of these offenses. And she's mentioned in all of Judge Goldberg's opinions. She was even mentioned in this court's remand order. And so without any additional context of who they contacted, you would assume it was Lisa. And then on that other point, I mean, this would imply that the family was not opposed. Number one, I haven't heard any other explanation for why you would include this statement in a concession. But number two, just thinking about the background victims' rights laws that apply in this case, Judge Goldberg has to comply with those laws before he can grant habeas relief. And so he would wrongly have thought in this case that, you know, if the family was opposed, that would be disclosed so that I know that I need to, you know, do some work to make sure their rights are complied with or as a way for them to be reasonably heard. They can express their opposition. But because there was no such opposition disclosed, you would reasonably think this meant that they agreed with the concession, which just wasn't true. And, again, this – Mr. Rodofsky pointed out that, you know, that's not one of the four express rights in the Federal Victims' Rights Act. There's an express right to be reasonably heard. Our position is not that they could, you know, change Judge Goldberg's mind or somehow, you know, change what the merits decision should be. But they do have a right to be heard before he grants relief. Now, here in this case, that was complied with. That was only after the Attorney General got involved. That's when they could submit their letters. That's when they were heard at the evidentiary hearings. That's when they all were contacted. But I think it's important to keep in mind if Judge Goldberg had just signed this concession and kind of trusted that victim's family statement, he would have violated federal law. It is our position he would have violated the Crime Victims' Rights Act. And I don't hear my friend on the other side to be saying it would be consistent with the CVRA to either not contact Lisa or to offer up a chance to be heard. And so that's why this misrepresentation mattered. And I think really on both of these misrepresentations, it's worth thinking about, you know, future cases and why this is a good thing so that courts can continue to trust prosecutors. Prosecutors are held to a higher degree of candor. We want courts to be able to trust them. What's your best case for the notion that they're held to a different standard than all the other lawyers? I think the Berger v. United States from the Supreme Court case discusses this. You know, they don't have a client. Their obligation is to the court. This is also reflected in their ethical standards. It's in the ABA Standards for Prosecutors International. What do we make of the fact that Pennsylvania hasn't formally enacted the ABA Standards on the prosecutorial function? Can we still look at them by analogy? I think you can still look for analogy, and I think this court's opinion may, you know, reflect obligations for other prosecutors from other states as well, if you set forth broader principles about prosecutors and duty of candor. But doesn't any extra obligation on prosecutors, doesn't that kind of pertain to the breadth of obligation? Prosecutors have Brady, they have Giglio, they have all sorts of obligations. And so maybe their ethical obligations and maybe their duties encompass kind of more surface area. But when we talk about a heightened duty, aren't we talking about just not how big the table is but how high the table is? And so I guess I get the point that just the nature that they're dealing with, the rights of the accused, they might have more surface area than a civil litigator doing a slip and fall case. But can you also say that the height of that duty is increased as well? If I can just connect that up to a question I asked your friend on the other side, what's the mental state here? He insists that it requires knowledge. But is it knowledge, is it purpose, is it recklessness, is it negligence? How should we read Rule 11 and should we read it differently in the prosecutorial context? Sure, so I'll start with that second question first. I think it's actually pretty straightforward. Rule 11 specifically got rid of the deliberateness intent requirement in the 1993 amendment. This court discusses that in its leave versus top zone decision. But the In Re Taylor decision that we cite, which in their reply brief I read that to be the only case they actually cited for a deliberateness requirement, but that case explicitly rejects a deliberateness requirement. And as I think was mentioned earlier, that case is a negligence case. They negligently didn't check the truth of the statements, and this court imposed Rule 11 sanctions. So as we were saying earlier, the question is whether it's objectively foreseeable that they could be false or misleading statements, which is essentially a negligence test. There is no deliberateness requirement under Rule 11, although there may be other undertypes of sanctioning mechanisms like 1927. And then just to get back to your question about prosecutors, we do think courts rely on prosecutors more than your ordinary litigants. They do have a particularly heightened duty to be thorough and candid and really to check the accuracy of what they're saying beforehand. We think that's already – So Rule 11 – no, prosecutors aren't typically in the Rule 11 space. That's a civil rule. So, I mean, it's a little weird to say we've got this civil rule that they get by virtue of this being a collateral civil attack. And so it strikes me as I get that they have a broader substance. The table's wider. The table's bigger. Why is it higher under Rule 11? Does the text of Rule 11 – the text doesn't give us any basis for that. It doesn't say prosecutors – you know, if a prosecutor in a civil case makes a representation, that's not Rule 11. What is the basis for this heightened duty? I assume that we're going to say in the text of Rule 11 we should find it somewhere. Where is that? So two points on this. Number one, the test is whether a statement is false or misleading. That's what this court said in Henry Taylor. That's how this court has interpreted the B3 provision. And a statement by a prosecutor is more reasonably foreseeable to be misleading to a court, particularly in circumstances like this, where you know the case is non-adversarial and the court is fully relying on the prosecutor and normally expects the prosecutor to develop the needed evidence. And so if the prosecutor has decided not to, it is more reasonably foreseeable that it will be misleading to say statements like were said in this case. So let's just play some – what if there was one or two words different? I think the phrase is careful review of the facts and the law, something to that effect. It's very close to that. What if it said careful review of the law and the facts and the record? Is that misleading now? I think that's still misleading because they're not clarifying what exactly they mean by record. It sounds like that's still being left vague. I actually think our broader argument here is they had a duty to tell the court they had not done the investigation. What if they just said – what if they left the word careful out? What if they just said a review of the facts and the law? That's not untrue, is it? They did review the facts and the law. I think that's highly misleading in context and the fact that they went further just confirms that this statement was misleading because I think those statements would be misleading as well given the context of the case. In Rule 11, advocates get a little wiggle room. It's not strict liability. I don't know that we're looking for any statement that could be construed differently. The family statements are more likely to be, I think, construed differently. But here, why aren't we back to why doesn't this reasonable foreseeable effect that you say comes from Taylor and Bankruptcy Rule 9011, that still has to be balanced against the text of the rule and the text of the rule talks about having evidentiary support. And so it strikes me that if you say, hey, I have evidentiary support for something, that's what the rule requires. I guess what you're saying is, ah, that's not enough because of Taylor. When you have evidentiary support, now you have to make sure that the way you express that evidentiary support is not reasonably foreseeable to be misleading. Is that your view of the law? I mean, our position is in this context, it is reasonably foreseeable that that statement would not have evidentiary support at all because this court made clear you should look outside the record. And so if they're not going to do that, they need to tell the district court so we can figure out what to do. But again, how is it misleading if under that first hypothetical I gave you, if they just said, we've reviewed only the record? That's not misleading anymore because I get it. There's this understanding that there might be some peak or some look a little bit outside the record for the unmitigating evidence. But if they just said, no, we didn't do that here, isn't that actually forthright? Isn't that saying, we get what the court says, we want to do a notice of concession regardless? I think if they said, Your Honor, we think the current existing record in this case is enough to grant release, and left it at that, that would not be misleading. But I'd urge this court to look at the rest of that concession. There's multiple statements saying our considered judgment should be deferred to. They even say it would be a waste of judicial and legal resources to go forward. That's what gives additional meaning to these two careful review words kind of plucked out of context. Let me ask you about the relationship between Rule 11 and our contempt power. Rule 11 is a weird fit here because it's basically about the pleadings and the papers. Now, when you argue the papers, the courts have found an implied duty of candor. But is there a difference between the standards we should be applying and the court's inherent power to hold the lawyer in contempt as an officer of the court or specifically under Rule 11 in terms of mental state or level of reasonable investigation or anything like that? I believe the inherent power kind of contempt of court standard is ordinarily bad faith, a subjective intent requirement. That doesn't apply here. I'd also like to quickly note just the modest nature of the sanctions. I think if Judge Goldberg had found intent, he likely would have seen a worse sanctions order than what's before this court, which is essentially just the finding of a Rule 11. So you argue for the sliding scale, the amount of notice, the length of the hearing, et cetera. Our standard of review is all informed by how severe or how tempted the sanction is? No, I don't think that's right. I mean, I think whether or not there's a Rule 11 violation is a straightforward question if those factors don't weigh on it. I'm just talking about the type of sanction you then impose for a Rule 11 violation and the fact that here he chose the most modest one. But I mean, there's still this colossal reputational injury that's in play, right? So you could say, I'm sanctioning you. Please just say you're sorry. You can comply with the sanction in under a second, but you've got the blot of the sanction with you forever. And so, I mean, at one level, the question is, should these attorneys have that blot of the sanction on their reputation forever? Was the circumstances that they faced so lacking in evidentiary support and so misleading that that hangs over their careers for the rest of their time as attorneys? To be clear, we fully acknowledge and understand that harm. But at the same time, I think the question for this court is whether that sort of behavior should be condoned, should be the norm, and would then rightly probably lead courts to not trust prosecutors and not trust confessions of error if they think – Whether it's normal or condoned, there's a lot of daylight between that standard and sanctionable conduct under Rule 11, isn't there? Right. I just think if this court were to reverse Judge Goldberg's Rule 11 finding, even under an abusive discretion standard, it would signal that representations like this are not sanctionable and can be made going forward. And I think that would lead courts in non-adversarial federal habeas cases with a very limited ability to grant it, rightly reticent to trust the prosecutors, which I don't think would be a good system. I mean, that's one projected consequence. But isn't another projected consequence that prosecutors would just say less? They just say, hey, notice concession, no explanation. Any questions the court has, we'd be happy to answer, but no explanation. It strikes me that this rule of your explanation wasn't what we expected, now is sanctionable, would lead to a degree of reticence by prosecutors for explaining their reasons for confessing error because any reason that is debunked or ultimately misleading will carry with it sanctions. I respectfully disagree, Your Honor. I think, again, it is this full brief read in context to tell the court they had done the review it was expecting. And I also just want to make clear how easily this case could have came out differently, such that we would not be here today. In that follow-up brief, they could have just said, Your Honor, we only looked at the current existing record. Here's why we conceded. That would not be sanctional. Or they could have said, Your Honor, we have some sort of policy against the death penalty, and that's why we're conceding relief. That would not have been misleading about what they reviewed. And also, even after the concession, the court had an order appointing the Attorney General where he said, I can't tell if they've looked at prison records. I can't tell if they've looked at criminal history. They could have filed a letter. They could have said, Your Honor, let's clarify. But they object to the Attorney General developing evidence, which further implies that they have. It was not until the court put sanctions on the table that they finally told him they had not pulled prison records. And so that's why I think the question for this court is really whether district courts should have to jump through that many hoops to be able to get that basic needed evidence. All right. Thank you, Ms. Gate. Next, we're going to hear from counsel for some family members, Patrice Carr, David Hart, and Lisa Hart-Newman. Ms. Ho? Thank you, Your Honor. May it please the Court, Alison Ho on behalf of the MEKI, Lisa Newman, Patrice Carr, and Tony Hart, thank you very much for the opportunity to speak today on their behalf. Nearly 40 years ago, Robert Wharton brutally murdered Lisa's parents, Bradley and Fern Hart, and left seven-month-old Lisa to freeze to death after turning off the heat in the home. When her grandfather found Lisa, she was lying on the floor next to her dead mother. Two juries have since concluded that Wharton deserves the death penalty. About that, I can do no better than speak Lisa's own words. Quote, the one high point in this entire situation has been the fact that justice was served when the verdict was rendered. I have held onto that from a child, and even more so as an adult. But now attempts are being made to undo justice, to take away the one positive thing that can be held onto in a tragedy like this. Close quote. The landmark Federal Crime Victims' Rights Act gives survivors like Lisa a voice. It tells them their voices matter, and it allows their voices to be heard during proceedings that have a profound effect on their lives, on their families, and on their futures. The misrepresentation by the DA's office about its communication with the victim's family was especially pernicious, because it wasn't just deeply misleading. It appropriated the victim's family to serve the office's own ends in securing the district court's acceptance of its concession, rather than treating the victim's family with the fairness and respect that the law requires. The district court acted well within its discretion in imposing modest sanctions under these egregious circumstances. As the district court rightly found, by omitting critical qualifiers, this statement unmistakably gave the impression that the office had conferred with the family before making the decision to concede, and that the family either agreed with the decision or did not object to it. Why else would the DA's office make this statement other than to send that exact message? But in reality, that message was completely false. The office made no attempt to reach out to Lisa at all before conceding away the death penalty, and the family is united in their opposition to the concession. It's also true, though, that Tony didn't reach out to family members after he received communication from the DA's office, correct? That's correct. And as he explained in his testimony before the judge, his understanding based on his conversation was that the DA's office was still considering. He didn't feel that there was anything to tell his family members. And this isn't in the record, but in my own experience in cases like this, it's a very difficult thing for family members when things sort of come up after years and years. I can't speak for Tony, but it would be understandable to me if he did not want to engage the other family members where it was not clear, and he did not understand exactly what was going on with what the DA's office was considering. I think certainly it wasn't an abuse of discretion for Judge Goldberg to find that Tony was misled and misunderstood, and I think it's significant in his testimony. He said when he did finally understand the truth about what was really going on, after talking to the DA's office, he said, if it had been made clear to me that what was really going on here was conceding away the death penalty of the office's own volition, that's something that would have stuck in my mind. That's something I would have remembered. Can I ask you to respond to your friend Mr. Rodofsky's position that the Crime Victims' Rights Act was fully complied with, the victims' views are really irrelevant here, they got enough notice? Yes, and two points to that. Let me address first his view about that they're irrelevant. I think that assertion is sort of typical, regrettably, of the attitude of the DA's office to the victims throughout these proceedings. For another thing, the office made that relevant when they made a representation to the district court about communication with the victims' office. They made that representation for a reason, not because it was irrelevant. It shouldn't be irrelevant in the abstract, but isn't it irrelevant as to the merits of the habeas petition? We don't disagree that it is not relevant to the merits of the Strickland issue in this case. No, we don't disagree. And Judge Goldberg made that quite clear in his opinion. He was very clear on that too. I think the issue to your question, Judge Bibas, Judge Goldberg had an independent obligation under the Victims' Rights Act to ensure that the victims and the victim's family are afforded their rights. One of those rights is a right to be treated with fairness and with respect for the victim's dignity. And I did not hear my friend on the other side explain how, in fact, that happened in this case, where no attempt, and there is no dispute, there was no attempt made to reach out to Lisa. Instead, the victims' coordinator outsourced the obligations to contact and to treat them with respect to a family member who is not even the closest family member. But again, it's Judge Goldberg that the law makes responsible for it. Could we just tighten the nexus between, I get what you're saying about the victim-witness coordinator. I get it. Not contacting Lisa Strikes Me is kind of just really a big mistake. But can we tie that to the sanctions against the two attorneys who are subject to sanction for that? The victim-witness coordinator is not going to be held accountable for her omissions or anything like that. But how exactly do we get from that mistake made by a member of the office to the two members of the office that, as far as I can tell, authorized the notice of concession, that just conceded, but might not have been up to date on everything? You can't micromanage every call that a victim-witness coordinator makes. So how can we tie the people who are sanctioned for this conduct to the deficient conduct? There has to be some decently tight nexus because this is sanctions, and it is very consequential from a reputational standpoint, if nothing else. Two points to that, Your Honor. When you raised that issue with my friend on the other side, I did not understand him to object to the right parties in terms of the sanctions are before this court. So I didn't understand that to be a joint issue with that. I think the connection here is when a representation is made in a concession, that there has been communication with the victim's family in the context particularly of the Victims' Rights Act, which puts an obligation on a federal district judge to ensure that victims have been afforded those rights. When you make a representation that, at minimum, is seriously misleading, that, Your Honor, I think, is the link that you're asking me about. At least that's for Kauffman, who signed it, right? Because Kauffman signed it. But how does that link get us to Winkleman and George, who didn't sign it? Is it statements that they made later in the brief that they signed, or is it the notion that they had to be responsible for the full content of that notice because they authorized the notice? Or is it a combination of the two? Is it something else? Thank you. Thank you for that question. My understanding, based on representations in the briefs and by my friend on the other side today, is that there's no disagreement that the two individuals who are sanctioned were properly the sanctioned party simply because they did direct the filing of the concession, even though they did not sign it. That's my understanding of that issue, Your Honor. Is there no further questions? Thank you. Thank you, Ms. Hoag. Thank you. I want to give Mr. Lev an opportunity. I don't know if he has any rebuttal to what Ms. Hoag just argued on behalf of the family. Briefly, Your Honor, and thank you for the opportunity. There is an implication in the argument we just heard from the victim's family that somehow granting relief to Mr. Wharton would do harm to the victims.  But as I know Your Honors understand, that can't be any part of your consideration in this matter. Ms. Hoag conceded it's not part of the Strickland analysis. It can't be part of the Strickland analysis. And I think on a broader perspective, my concern is, as I listen to the arguments in this case, that there is a degree of spillover between the arguments about the sanctions and the merits of the case. Because there are issues that came up about the admissibility of the escape, et cetera, that go to the merits. And again, you know, I ask the Court to please separate Mr. Wharton's issue out as if the sanctions case doesn't exist at all, because it deserves to be heard by itself on the merits of the Strickland issue, and whether or not the district attorney's office should be subject to sanctions really has nothing to do with it. In Claim 2 of our brief, we note the tension that exists between the merits and the sanctions order, that it becomes an easier atmosphere to sanction the district attorney if the claim, if you find the claim lacks merits. And it becomes harder, not impossible, certainly, but harder to sanction the district attorney's office for conceding an issue that actually has merit. And so it's a complicated interrelationship between the two. Mr. Webb, I think I can speak for the Court when I say that we understand it would be as inappropriate, as ironic, if it put your client in a worse position that the DA's office conceded the point. So we understand. Well, thank you very much. That's the point I wanted to make. I think Judge Goldberg in Claim 2 kind of crossed over the line on that when he integrated this hearing and adopted those dual roles. I'll rely on what we wrote on the brief of that, but thank you for the time. Thank you. Thank you. We'll hear Mr. Rudovsky's rebuttal. Some indulgence here for a long morning, Your Honor. I will try to take the two minutes, and I think I can. Number one, I want to address directly this question of the standard and deliberate misleading and so on. It's not just the prior cases. Just a month ago in Greenberg v. Lahaki, this Court wrote an opinion adopting the same position, that in this kind of situation, you've got to make sure that there was a deliberate misleading, not, as they argued, just a misleading of some kind of negligence that controls the standard under Rule 11. And also, the recent cases out of the other circuits that we cite, that because it's sua sponte, the burden is even higher, and it amounts to a contempt of court. Two circuits have adopted that. District courts here have adopted that. There's no dissent to that view, given the fact that there's no safe harbor. And those courts have made the very good point, because there's no safe harbor, unless it's contemptuous. That is, the judge says, give me the information and you don't. Ask for it. This judge never asked for any information whatsoever. It would have been provided, and it was provided at the hearing. That's when we had a full airing of everything that the district attorney did and why they did it. So it's not a matter of pre-amendment rules. This Court and other courts have addressed this issue, particularly in the sua sponte. In our prior brief, you have all those points. Second point. The argument, again, that somehow the 1992 death penalty hearing, when evidence of good character was introduced and found as a mitigator, it's not just, you know, he was a nice kid, he was friendly, wrote poetry, that kind of thing. It was evidence of good character. The jury found it as a mitigator. Pennsylvania law, when you look at it, makes it absolutely clear you've opened the door. You have opened that door completely to any evidence that would rebut good character. What rebuts good character more powerfully, right, than the escape attempt or any violent crime? And you've heard no response at all that the escape attempt fit under the independent aggravator, Section 9, of a history of violent or potentially violent felonies. Once the office understood that none of that was used before, it was not unreasonable for them, 30 years later, to start that route. And Wiggins and Rompilla, as much as they say, from the defense point of view, look for all the good mitigators, right? Even if the family says, well, there was no violence and you've got other indications, look for that, look in the file the prosecutor looked at, you are not imposed with a duty. And it's the same reason on the standard of overturning every rock and doing a fishing expedition. Sure, you can say, well, it was a fishing expedition to check the prior record. There's no reason to think that that prior record would have any relevance or that there even was one if the prior district attorney didn't use it. And I think that goes to Judge Fitts's point, which we agree with completely. When we look at that term, careful review, and under the remand order, there would be no leads to the district attorney or defense attorney to think there's something out there that the district attorney didn't have or didn't produce that might be relevant. And particularly when you're talking about now a sanction, right, not the question of whether the concession was proper, just as Mr. Lev said. When you're looking at the question of whether that statement was proper, they reviewed everything. They reviewed the death penalty hearing. They reviewed the briefing. And this last point, if I can, at some point in the briefing, kind of hidden in a footnote, was that some of the disciplinary records hadn't been disclosed. That rebutts completely their argument that in all that briefing, they had no duty or reason to talk about the escape attempt because there had never been an evidentiary hearing. That's not true. In trying to persuade a court, PCRA or habeas, that there's no claim here, they could have made that point. Look at the escape attempt. What lawyer would have opened the door to that by introducing a good adjustment record? They didn't do it. There was no hint. It wasn't on the radar screen of anybody. I'll leave it at that. Thank you. Thank you very much, Mr. Rudofsky. There have been several amici appointed in this case, so let me begin on behalf of the court. As we always do, we thank the lawyers who have volunteered their time and energy upon appointment of the court. So thank you to all amici in the case. I want to thank all counsel for their diligence and excellent briefing and oral argument. I want to order that a transcript of both arguments be provided, and I think it probably makes the most sense to have the district attorney's office pay for the transcript of this argument we just heard. And I would ask the Commonwealth to take care of the transcript for the first argument. If anyone cares to object to that, I'll speak now or forever hold your peace. All right. Again, thank you all for your hard work, and thank you to the members of the public that came to court today. So stand adjourned.